IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN H., <br><br>Plaintiff, <br><br>v. <br><br>ANDREW M. SAUL, Commissioner of Social Security, <br><br>Defendant. | Case No. 18-cv-5798 <br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kevin H.[1] filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act). For the reasons stated below, the Court grants Plaintiff's motion for summary judgment [9] and denies the Commissioner's motion for summary judgment [17]. The case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB on August 6, 2015, alleging that he became disabled on August 1, 2015. (R. at 15). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 119–20). On December 7, 2017, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 34–76). The ALJ also heard

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

testimony from Thomas Heiman, a vocational expert (VE). (*Id.*). The ALJ denied Plaintiff's request for benefits on March 8, 2018. (*Id.* at 15–28). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 1, 2015. (*Id.* at 17). At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine with disc herniation, major depressive disorder, post-traumatic stress disorder (PTSD), history of traumatic brain injury, migraine headaches and substance abuse in partial remission. (*Id.* at 18). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the enumerated listings in the regulations. (*Id.*). The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to perform light work:

> except that the claimant can only occasionally stoop, crouch, crawl, kneel and balance, can only occasionally climb ramps and stairs, and can tolerate only moderate noise levels. In addition, the claimant is able to understand, remember and apply simple information, is able to adjust to routine changes in process and priority, and must have only end-of-the-day performance expectations, not hourly. The claimant needs to work alone and not in coordination with others, should avoid jobs that require frequent communication, public contact or more than occasional interaction with co-workers or supervisors. The claimant can work five days a week, eight hours a day, at a consistent pace with only normal breaks.

---

[2] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 CFR 404.1545(a).

(*Id*. at 20). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff was unable to perform past relevant work, but did find that there were jobs in the national economy that Plaintiff could perform. (*Id*. at 27). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date of August 1, 2015 through the date of the decision. (*Id*. at 28). The Appeals Council denied Plaintiff's request for review on June 21, 2018. (*Id*. at 1). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Administration (SSA). 42 U.S.C. § 405(g). The Court may not engage in its own analysis of whether the plaintiff is disabled nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "The ALJ's decision will be upheld if supported by 'substantial evidence,' which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (citations omitted). Substantial evidence "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). In addition, the ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."

*Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (internal quotations and citation omitted).

The Court accords great deference to the ALJ's determination, but "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (internal quotations and citation omitted). The deferential standard "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citation omitted). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation omitted). Reversal and remand may be required "if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted).

### III. DISCUSSION

In his request for reversal or remand, Plaintiff challenges the ALJ's (1) decision to give little weight to his disability assessment by the Department of Veterans Affairs (VA); (2) failure to find listing level severity at Step 3; (3) assessment of the medical opinion evidence; (4) review of his symptoms; and (5) RFC finding. The Court

agrees with Plaintiff that the ALJ erred in his analysis of the VA assessment, medical opinion evidence and RFC finding as it relates to Plaintiff's migraines.[3]

**A. Veterans Administration Assessment**

The ALJ acknowledged that the VA assessed Plaintiff to be "100% unemployable due to a service-connected disability." (R. at 26). The December 5, 2017 letter from the Regional Director of the VA Office stated that Plaintiff is "in receipt of a 100% Individual Unemployability service-connected disability rating effective 7/21/2011 to present and received an honorable discharge." (*Id.* at 625). However, the ALJ gave the VA assessments "little weight" because they were "made in response to a disability program whose standard of disability differs from that of Social Security [and] these opinion[s] are conclusory in nature and do not provide function-by-function assessment of the claimant's limitations." (*Id.* at 26). Plaintiff argues that the ALJ improperly disregarded the VA assessment. Defendant counters that the ALJ considered and adequately explained how he weighed the VA assessments.

The ALJ's first critique, that the VA standard differs from the Social Security standard is true, but the ALJ failed to account for the fact that "the differences are small." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). Creating confusion in the ALJ's analysis is the ALJ's reference to a "prior [VA] opinion" in the record (R. at 26). It is not clear if the ALJ was weighing two different VA assessments or believed one was a component of the other. The ALJ failed to sufficiently explain, in any event, why both deserved "little weight." And while the parties seem to disagree about the

---

[3] Because the Court remands on these grounds, it need not address Plaintiff's other arguments at this time.

percentages of the disability conditions that contributed to Plaintiff's VA rating, the VA was clear that Plaintiff had "100% Individual Unemployability service-connected disability." (*Id.* at 625). Given the plain language of the December 2017 letter and Defendant's acknowledgement that the ALJ considered the VA assessment to mean Plaintiff "was 100% disabled" (Dkt. 18 at 2), the Court understands the record to reflect that VA assessed Plaintiff to be 100% disabled and unemployable.[4] Even a finding of "70% disabled and unemployable," while not establishing entitlement to disability benefits, "is *practically indistinguishable* from the SSA's disability determination, which asks whether a medically determinable impairment prevents the claimant from engaging in past relevant work or any substantial gainful work that exists in the national economy." *Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017) (emphasis added); *see also Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006) (ALJ should have given VA disability determination "some weight.").

Second, it is not clear why the ALJ decided that the VA assessment was "conclusory." The ALJ did not suggest that the VA rating was invalid or otherwise provide any reason to discredit the VA rating. And the ALJ did not explain why the lack of "function-by-function assessment" warranted disregarding the VA

---

[4] Defendant argues that the VA record indicates that Plaintiff's PTSD was 70% of his disability and "traumatic brain injury was only 10% disabling under the VA standards. No physical impairment contributed to plaintiff's VA disability rating." (Dkt. 18 at 2, citing R. at 726). However the ALJ did not discuss the percentages accompanying specific conditions in the disability rating and did not cite the page of the record, 726, that Defendant cites. The Court will not speculate about how the ALJ believed Plaintiff's VA rating was calculated because the Court's review is confined "to the rationale offered by the ALJ." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). *See also Jelinek v. Astrue*, 662 F.3d 805, 811-12 (7th Cir. 2011) (court's review limited to the reasons articulated by the ALJ).

assessment. Indeed the record contains hundreds of pages of progress and treatment notes and examinations from the VA that preceded the December 2017 determination. *See Derry v. Berryhill*, 756 F. App'x 619, 625 (7th Cir. 2019) (ALJ's statement that VA rating inconsistent with "normal" findings insufficient where ALJ failed to point to those findings); *see also Cannon v. Berryhill*, 2019 WL 1011872, at *12 (N.D. Ind. Mar. 4, 2019) (while not binding, "the VA's disability finding is evidence in favor of Plaintiff's disability and must be properly reviewed and weighed by the ALJ.").

Accordingly, while the ALJ was not required to give the VA assessment dispositive weight, he was required to build an accurate and logical bridge from the evidence to his conclusion. *Scott*, 297 F.3d at 595; *Spicher v. Berryhill,* 898 F.3d 754, 757 (7th Cir. 2018). The ALJ did not do so.

**B. Medical Opinions**

Plaintiff challenges the ALJ's weighting of three medical opinions: treating psychologist Justin Birnholz, Ph.D., consultative examining psychologist Michael Stone, Psy.D., and consultative examining physician Roopa Karri, M.D.

***Dr. Birnholz***: Plaintiff argues that the ALJ erred in giving "little weight" to the opinion of clinical psychologist Dr. Birnholz. (*see* R. at 26). Since Dr. Birnholz was a treating doctor, the ALJ had to provide a "sound explanation" for discounting his opinion. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

In December 2017, Dr. Birnholz, who had treated Plaintiff every one to three weeks for an hour since May 2017, completed a Mental Residual Functional Capacity

Statement for Plaintiff. (*Id.* at 616-19). In the statement, Dr. Birnholz responded to questions about Plaintiff's ability to work full time. According to Dr. Birnholz, Plaintiff would be precluded from performance for 10% of an 8 hour workday in categories including: ability to maintain attention and concentration for extended periods of time and perform activities within a schedule; maintain regular attendance and be punctual and within customary tolerances; make simple work-related decisions; accept instructions and respond appropriately to criticism from supervisors; and travel in unfamiliar places or use public transportation. (*Id.* at 617-18). Plaintiff would be precluded from performance for 15% of an 8 hour workday in the categories of: work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.* at 617). Dr. Birnholz further opined that Plaintiff would have to be off-task 30% of the workday because of his limitations and he would have to miss work more than six days per month because of his limitations or need for treatment. (*Id.* at 618). Finally Dr. Birnholz opined that he believed that Plaintiff would be unable to work full-time because of his impairments. (*Id.* at 619).

Acknowledging that the "treating physician rule" applied to Dr. Birnholz but deciding not to give his opinion controlling weight, the ALJ identified the six criteria requiring analysis. (*Id.* at 24-25). *See Kaminski v. Berryhill*, 894 F.3d 870, 874 n.1

(7th Cir. 2018); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). First as to nature and duration of the relationship, the ALJ noted that Dr. Birnholz saw Plaintiff for an hour every one to three weeks since May 2017 for psychotherapy, but noted that Dr. Birnholz's progress notes are not in the record. While the lack of progress notes understandably gave the ALJ pause and may have warranted not giving the opinion controlling weight, the ALJ did not explain how this fact contributed to his weighting of Dr. Birnholz's opinion. It is unclear whether it meant, for example, that the ALJ believed Dr. Birnholz to be less credible or questioned whether their treatment relationship was substantial.

Second, as to length and frequency of treatment, the ALJ stated that Dr. Birnholz had seen Plaintiff for seven months, and estimated that "conservatively [he] would have interacted with the claimant no fewer than eight to nine times." (R. at 25). Plaintiff takes issue with the ALJ's low estimate of the frequency of visits without considering an upper range. (Dkt. 10 at 13). The Court agrees. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (ALJ may not "select and discuss only that evidence that favors his ultimate conclusion."). The ALJ acknowledged that his estimate of the frequency of treatment was conservative, but did not account for the possibility that Dr. Birnholz saw Plaintiff more than twenty times in the 7-month period. Also, the ALJ did not explain whether he believed that Dr. Birnholz seeing Plaintiff eight to nine times meant that they did not have a substantial treatment relationship.

Next, as to medical evidence support, the ALJ stated that while there were no progress notes from Dr. Birnholz, his report showed Plaintiff has a "good prognosis

and is improving." (R. at 25). Dr. Birnholz's full statement, however, was that Plaintiff's prognosis "*appears* good *if he continues with treatment.*" (*Id.* at 616, emphasis added). And while Dr. Birnholz stated that Plaintiff is "making progress in psychotherapy", he did not say that he was "improving." (*Id.* at 619). The ALJ also recognized that Plaintiff had three or more psychiatric hospitalizations before participating in the October 2016 residential substance abuse program, and that the record "contains program discharges and no shows, which do not serve to enhance the impact that the psychologist has asked the undersigned to presume." (*Id.* at 25). While it is not entirely clear what this statement means, it appears to show ALJ questioning Plaintiff's progress and good prognosis.

By pointing to these records which seem to *support* Dr. Birnholz's opinion about Plaintiff's limitations, the ALJ did not explain why Dr. Birnholz's opinion nevertheless deserved little weight. The ALJ then noted some mixed results from a VA assessment about Plaintiff's neurobehavioral effects, judgment impairment, and memory deficits but found the "larger issue was anxiety." (*Id.*). The record cited does not state that Plaintiff's anxiety was the "larger issue," nor did the ALJ explain what that meant in relation to Dr. Birnholz's opinion. *See Moon*, 763 F.3d at 722 (ALJs should avoid the "temptation to play doctor and make their own independent medical findings.") (citations and quotations omitted).

As to consistency with the record, the ALJ explained that the "results of therapy and residential treatment by stated account have been positive and promising [and] the claimant has experienced some symptom diminution in the context of work

function restoration." (R. at 25). The ALJ did not provide any record citations or otherwise specify which account or records he was referring to. Moreover, even with notes of improvement with treatment, ALJs are not permitted to "cherry-pick" from mixed results related to mental health to support a denial of benefits. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ concluded that Dr. Birnholz appeared to place excessive reliance on Plaintiff's subjective allegations, and Dr. Birnholz's conclusions were in contrast to Plaintiff's residential substance abuse treatment that "largely was successful." (*Id.* at 26). Despite completion of the treatment program in 2016, medical records after 2016 show Plaintiff was failing to attend mental health appointments in January 2017 in the VA trauma services program. Plaintiff was therefore discharged by clinical psychologist Dr. Jonathan Beyer because of failing to attend appointments. When Plaintiff again sought treatment in March 2017 to deal with depression and anxiety, at that time Dr. Beyer noted that Plaintiff's "baseline" was "some level of suicidal ideation," and Dr. Beyer placed a referral for him to the mental health clinic. (*Id.* at 609-11). Despite doubting Dr. Birnholz's assessment that Plaintiff was making progress and also noting Plaintiff's daily drug use in June 2017, the ALJ still concluded that Plaintiff's treatment had been "successful." (*Id.* at 22, 25). *See Spicher*, 898 F.3d at 757 ("an ALJ may not ignore evidence that undercuts [his] conclusion.").

In sum, the ALJ may have had reasons not to give controlling weight to Dr. Birnholz's opinion, but the ALJ did not build an accurate and logical bridge to his decision to give the opinion "little weight." *See Cullinan v. Berryhill*, 878 F.3d 598,

605 (7th Cir. 2017) (inadequate evaluation of treating physician opinion requires remand).

***Dr. Stone***:

Clinical psychologist Dr. Stone examined Plaintiff at the request of the state agency on November 2, 2015. (R. at 460-65). In his mental status exam, Dr. Stone stated that Plaintiff's behavior was "appropriate"; he exhibited periodic impulsivity and distractibility, but was easily redirected back to task; and Plaintiff "evidenced intrusive traumatic memories, depression and anxiety related to his combat experiences." Dr. Stone found Plaintiff's affect to be appropriate and mood anxious but within normal limits, and observed Plaintiff's "thought content positive for intrusive traumatic memories, depression and anxiety related to his combat experiences" and Plaintiff had "ongoing suicidal impulses." Plaintiff did not show paranoid ideation or delusion. Dr. Stone further observed Plaintiff had "problems maintaining a consistent level of attention and concentration during the evaluation." The ALJ stated that Dr. Stone noted Plaintiff's "intact judgment" (*id*. at 24), but Dr. Stone actually stated that Plaintiff exhibited "mild impairment in his judgment." (*Id.* at 464). Dr. Stone explained that Plaintiff's "history, observed behavior and mental status are consistent with intrusive traumatic recollections, anxiety and depression." (*Id.*). In assessing work tolerance, Dr. Stone evaluated Plaintiff as having a "fair" ability to relate to others, understand and follow simple instructions and maintain attention and concentration. He also assessed Plaintiff as having "poor" ability to

withstand the pressures of day-to-day work activity and said he would be unable to handle or manage funds on his own if benefits were awarded. (*Id*. at 465).

The ALJ gave Dr. Stone's opinion "little weight" because, the ALJ reasoned, Dr. Stone's conclusions were "speculative" and "internally inconsistent with his own generally normal mental status examination." (*Id*. at 24). However, the ALJ did not accurately represent all of Dr. Stone's report (for example, as discussed, by stating that Dr. Stone observed Plaintiff's judgment to be "intact" when Dr. Stone actually found his judgment to be mildly impaired). The ALJ also omitted from his discussion some of Dr. Stone's observations, such as that Plaintiff had intrusive traumatic memories, depression, anxiety and ongoing suicidal impulses. And the ALJ concluded Dr. Stone's evaluation was a "generally normal mental status examination" despite the aforementioned observations and Dr. Stone's finding that Plaintiff had problems maintaining a consistent level of attention and concentration during the 45 minute evaluation. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves.").[5]

While an ALJ "need not credit the opinions of the agency's own doctors, [] *rejecting* the opinion of an agency's doctor that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (emphasis in

---

[5] In discounting Dr. Stone's opinion, the ALJ also relied on some work Plaintiff had done, though the ALJ recognized during some of this time Plaintiff was "high or drunk during work." (R. at 24). At the hearing, Plaintiff testified that although he was doing part-time work, he had difficulty getting to and doing the job. (*Id*. at 48-50).

original) (citations omitted). *See also Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("agency doctor [was] unlikely [] to exaggerate an applicant's disability."). Here, the ALJ did not provide a good explanation for giving only little weight to Dr. Stone's opinion. This is especially true where Plaintiff's treating psychologist was consistent with the opinion of this state agency psychologist.

*Dr. Karri:*

Finally, the ALJ gave "significant weight" to the November 2, 2015 opinion of consultative examining physician Roopa Karri, M.D. (R. at 455-58).[6] Dr. Karri's report focused on a physical examination of Plaintiff. As to mental status, the entirety of Dr. Karri's findings was: Plaintiff was "alert and oriented in all 3 spheres. The hygiene and grooming were good. Overall effort and cooperation were excellent." And Plaintiff "can handle the funds if granted disability." Defendant argues that "Dr. Karri opined that plaintiff would be capable of managing his own funds if he received benefits, which the ALJ reasonably interpreted as indicating that plaintiff had adequate judgment and impulse control." (Dkt. 18 at 13). True, the ALJ inferred from Dr. Karri's statement about Plaintiff's ability to handle funds that Plaintiff's "judgment and ability to control impulses on presentation seemed adequate." (R. at 24). But Dr. Karri's report nowhere mentioned Plaintiff's judgment or impulse control. Making this inferential leap, particularly given the very brief mental status report that Dr. Karri provided, shows that the ALJ's decision to give Dr. Karri's opinion significant weight was not supported by substantial evidence. *See Moon*, 763

---

[6] The ALJ cited the wrong date for the date of Dr. Karri's examination. (R. at 23). It was November 2015, not July 2017. (*Id.* at 455).

F.3d at 722 (ALJs should avoid making their own medical findings). The brevity of internist Dr. Karri's mental evaluation stands in contrast to the fulsome report by *psychologist* Dr. Stone, completed on the same day. In contrast to the lack of function-by-function assessment by Dr. Karri, which the ALJ acknowledged (R. at 23), Dr. Stone completed a 6-page report focused on Plaintiff's mental limitations, and treating psychologist Dr. Birnholz completed a detailed function-by-function assessment. *See Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision.").

The ALJ's assessment of these medical opinions, also considered in light of the VA disability rating to which the ALJ only gave "little weight", shows that "[t]he ALJ's failure appropriately to account for the VA's disability determination and the medical opinions supporting it…requires a remand." *Derry,* 756 F. App'x at 625.

### C. RFC

Finally, the Court agrees with Plaintiff that while the ALJ found his migraine headaches to be a severe impairment and accounted for migraines in the RFC in terms of noise, the ALJ did not mention or explain why light exposure was not included. As the ALJ noted, Plaintiff testified to having migraines about once a day, which make him "very sensitive to light and sound, tremendous pain in the front of my head." (R. at 20, 59). At the hearing, the VE testified that if Plaintiff had to avoid florescent lighting, he would be unable to do the identified jobs. (*Id.* at 75). The ALJ pointed to inconsistency in the record about the frequency of Plaintiff's migraines,

but that does not explain the incorporation of a noise limitation but not a light limitation. (*Id*. at 23, stating that the ALJ was including a restriction for only moderate noise to give the migraine headaches impairment "its widest reasonable application."). "We have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Here, the Court is unable to conclude that the ALJ's RFC determination was supported by substantial evidence.

In sum, the Court cannot conclude that substantial evidence supports the ALJ's conclusions about Plaintiff's work-related limitations and his determination that Plaintiff can perform light work with certain additional limitations. Remand is warranted. The errors were not harmless because the Court cannot be sure that the result of the ALJ's finding as to Plaintiff's disability would have been the same if the ALJ had sufficiently evaluated the VA rating, medical opinions, and limitations caused by migraines. *See Rockwell v. Saul*, 781 F. App'x 532, 538 (7th Cir. 2019).

Plaintiff requests reversal of the ALJ decision. To the extent Plaintiff also seeks an award of benefits, both requests are denied. The Court does not believe this case meets the high standard for reversal and an award of benefits. *See Briscoe ex. re. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (reversal with an instruction to award benefits only appropriate if "all factual issues have been resolved and the record can yield but one supportable conclusion.").

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment [9] is granted and the Commissioner's Motion [17] is denied. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: November 23, 2020

MARY M. ROWLAND
United States District Judge